IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CT-3150-BO

| | | |
|---|---|---|
| MOHAMMED N. JILANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| LORRIN FREEMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff brings this civil rights action, pro se, pursuant to 42 U.S.C. § 1983 against defendants Raleigh Police Department ("RPD") Officer S. Thompson ("Thompson"), Cary Police Department ("CPD") Officer Larry Arellano ("Arellano"), and the Wake County Clerk of Superior Court Blair Williams ("Williams").[1] The matter now comes before the court on defendants' respective motions for summary judgment (DE 125, 128, 132) pursuant to Federal Rule of Civil Procedure 56. Also before the court is defendant Thompson's amended request to take judicial notice (DE 127). Plaintiff did not respond to defendants' respective motions. In this posture, the issues raised are ripe for adjudication.

## BACKGROUND

Plaintiff's action arises out of his arrest by defendant Arellano for burglaries in Cary, North Carolina in October 2014, and his arrest by defendant Thompson relating to events occurring on

---

[1] Defendant Jennifer Knox was the Wake County Clerk of Superior Court when the alleged cause of action arose, but Blair Williams currently is the Wake County Clerk of Superior Court. The court notes that, pursuant to Federal Rule of Civil Procedure 25(d), defendant Blair Williams is substituted for former defendant Jennifer Knox.

December 12, 2014. Beginning in October 2014, the CPD assigned defendant Arellano to investigate a series of seven residential burglaries that occurred in the City of Cary between the dates of October 14, 2014, and October 28, 2014. ((DE 84) ¶ 4). Arellano's investigation revealed that a Bersa Thunder 380 handgun had been stolen in the course of the robberies from the address of 1241 Pond Street, and that the homeowner's security camera captured video footage of the intruder. (Id. ¶ 5, Ex. A).[2]

On December 12, 2014, RPD officer defendant Thompson observed a silver Toyota Corolla with two male occupants traveling on Capital Boulevard in Raleigh, North Carolina. (Thompson Decl. (DE 89) ¶¶ 3-4); States v. Jilani, No. COA18-123, 2018 WL 4441153, at *3-5 (N.C. App. Sept. 18, 2018). While the driver of the Toyota Corolla was stopped at a traffic light, defendant Thompson conducted a license plate check on the vehicle, and determined that the driver matched the description of Scott Belnavis ("Belnavis"). (Thompson Decl. (DE 89) ¶ 5). Thompson, additionally, learned that Belnavis had two active outstanding warrants for his arrest in connection with an October 20, 2014, incident. (Id.) Thompson then proceeded to the address listed for Belnavis. (Id. ¶¶ 6-8). Upon arriving at Belnavis' address, Thompson observed the silver Toyota Corolla parked outside of the property with no one occupying the driver's seat, but with plaintiff sitting in the passenger seat. (Id.)

As defendant Thompson approached the Toyota Corolla, plaintiff rolled down the driver-side-door window, and defendant Thompson smelled a strong odor of marijuana emitting from within the vehicle. (Id. ¶ 8). Defendant Thompson then introduced himself to plaintiff, and asked

---

[2] Exhibit A to (DE 84) depicts a still photograph from the surveillance video obtained from the 1241 Pond Street homeowner. See ((DE 84), Ex. A).

2

plaintiff whether he was in possession of marijuana or had recently smoked marijuana. (Id. ¶ 11). Plaintiff admitted to the possibility of having approximately one gram of marijuana in his pocket. (Id.) Defendant Thompson also observed an open container of alcohol in the vehicle's inside console and a small white blunt on top of the interior driver's side door handle. (Id. ¶¶ 10-12). Thompson next asked plaintiff to place his cell phone on top of the vehicle. (Id. ¶ 12). Plaintiff complied, and remained inside the vehicle while defendant Thompson contacted the RPD for back up. (Id.)

At some point, Belnavis exited the property carrying a large gun case. (Id. ¶ 14). Defendant Thompson then verified that the person exiting the property was Belnavis, and that Belnavis had been the driver of the Toyota Corolla. (Id.) Thompson also verified Belnavis' address, and learned from Belnavis that the gun case Belnavis was carrying in fact contained guns. (Id.) Thompson then frisked Belnavis to determine whether Belnavis possessed additional weapons, and did not find any. (Id.) Thompson next directed plaintiff to exit the vehicle, and found .4 grams of loose marijuana in plaintiff's front pocket. (Id. ¶ 15). Additional RPD officers then arrived on the scene. (Id.) After the additional RPD officers arrived, defendant Thompson searched the Toyota Corolla, and found the following: a partially smoked marijuana blunt; an open bottle of Corona; a plastic bag containing 85.6 grams of marijuana; a Bersa Thunder 380 handgun; a black digital scale; and additional firearms and drug paraphernalia. (Id. ¶ 16). Serial numbers from the firearms were checked against the National Crime Information Center database, and the Bersa Thunder 380 handgun was determined to have been reported stolen in Cary, North Carolina.[3] (Id. ¶ 17). Officers then verified that plaintiff

---

[3] Plaintiff stipulated to the fact that "on December 12, 2014, he knew a Bersa .380, serial number D01830," was located in the same vehicle as he was and that the knew it was a stolen weapon. ((DE 87-4), p. 56).

3

was a convicted felon due to plaintiff's prior felony conviction for accessory after the fact robbery with a dangerous weapon. (Id. ¶ 18).

After taking plaintiff into custody, defendant Thompson appeared before a Wake County magistrate and explained the circumstances and grounds for plaintiff's arrest. (Id. ¶ 20). In response, the Wake County magistrate issued a warrant for plaintiff's arrest for the following offenses: felony possession of a firearm by a felon, felony possession of a stolen firearm, felony possession with the intent to sell or deliver a schedule VI controlled substance, and misdemeanor possession of marijuana up to ½ ounce. (Id.; (DE 57-1), pp. 4, 6, 7; (DE 127), Ex. 2). On March 23, 2015, a Wake County Grand Jury returned an indictment finding that on December 12, 2014, plaintiff possessed marijuana with the intent to sell or deliver in violation of N.C. Gen. Stat. § 90-95(a)(1), and that he possessed a stolen firearm in violation of N.C. Gen. Stat. § 14-71.1. ((DE 127), Ex. 3). On January 25, 2016, a Wake County Grand Jury returned an additional indictment finding that on December 12, 2014, plaintiff, a previously convicted felon, possessed several firearms in violation of N.C. Gen. Stat. § 14-415.1. (Id. Ex. 4).

On August 6, 2015, a hearing was held in the Wake County District Court on plaintiff's misdemeanor charge for possession of marijuana up to ½ ounce in violation of N.C. Gen. Stat. 90-95(D)(4), case number 14 CR 228914. (Stevens Aff. ¶ 5).[4] During the hearing, plaintiff executed a waiver of counsel form, and the Wake County District Attorney voluntarily dismissed[5] plaintiff's misdemeanor charge for possession of marijuana up to one ounce. (Id. ¶ 7 and (DE 134) Ex. D, p.

---

[4] Mark Stevens, a Wake County Assistant District Attorney, submitted an affidavit in support of defendant Williams' motion for summary judgment. (Stevens Aff. ¶ 2).

[5] Stevens attests that when the State dismisses a case, it is called a voluntary dismissal and the charges are dropped against the defendant. (Stevens Aff. ¶ 9).

10). A subsequent trial on the remaining felony charges was had in the Wake County Superior Court on May 2, 2016. ((DE 127), Ex. 5). The jury was unable to reach a verdict as to the charge of possession of a stolen firearm, but found plaintiff guilty of felony possession of marijuana in violation of N.C. Gen. Stat. § 90-95(D)(4). (Id.) The following day, plaintiff was sentenced to a term of 6-17 months imprisonment, but given 402 days of prior custody credit on his sentence. (Id. Ex. 6). Plaintiff was placed on supervised probation for 18 months and ordered to pay costs and restitution in the amount of $4,845.00. (Id.) On July 20, 2016, the State of North Carolina dismissed plaintiff's remaining charge–possession of a firearm by a convicted felon. (Id. Ex. 7).

In the interim, in December 2014, the RPD contacted defendant Arellano to report that a Bersa Thunder handgun was discovered in a vehicle occupied by plaintiff and Belnavis. ((DE 84) ¶ 6). After conducting an investigation, Arellano learned that plaintiff had a criminal history which included charges such as breaking and entering, larceny of a motor vehicle, misdemeanor larceny, and possession of drugs. (Id. ¶ 7 and Ex. B). Arellano's investigation further revealed that plaintiff lived with his mother at 409 Normandy Street in Cary, North Carolina, which was located in an area close to the location of the October 2014 series of burglaries. (Id. ¶ 7 and Ex. D). On January 3, 2015, Arellano interviewed plaintiff's mother who informed Arellano that plaintiff stayed at her home during the day, including the time periods in which each break-in and burglary occurred, and that she could not account for plaintiff's whereabouts during those time periods because she was at work. (Id. ¶ 9 and Ex. G). Plaintiff's mother also reported that plaintiff had stolen from her in the past. (Id.)

On the same date, Arellano also interviewed plaintiff at the Wake County Detention Center where he was being held as a result of his December 2014 arrest. (Id. ¶ 11). Plaintiff initially agreed

to waive his constitutional rights and answer questions, and was forthcoming with information related to the stolen pistol found in the car and his December arrest. (Id. ¶ 12 and Exs. D, E). Plaintiff, however, ultimately ended the interview and requested an attorney when the discussion turned to the October 2014 burglaries in Cary. (Id. and Ex. F). Arellano then prepared an investigation report. (Id. ¶ 14 and Ex. G).

Following the January 2015 interview with plaintiff, Arellano applied to Wake County Magistrate P.B. Powe for warrants to arrest plaintiff in connection with the 2014 burglaries. (Id. ¶ 17 and Exs. H-N). The Wake County District Attorney next obtained grand jury indictments against plaintiff. (Id. ¶ 18; (DE 35), pp. 24-28). However, on July 20, 2016, the State of North Carolina dismissed the charges in connection with the 2014 burglaries as a part of a plea deal related to other criminal charges. (Id. ¶ 19; (DE 35), pp. 43-45). Plaintiff then was released from custody that same day. (Id.)

On June 12, 2017, plaintiff filed the instant action pro se pursuant to 42 U.S.C. § 1983, alleging claims related to the foregoing arrests and subsequent criminal proceedings. On March 29, 2018, the court directed plaintiff to file one amended complaint, and informed him that the amended complaint would be considered the complaint in its entirety. On April 10, 2018, plaintiff filed his amended complaint, and the court then allowed plaintiff to proceed with claims against defendants Thompson, Arellano, and Williams, which include: defendant Thompson "illegally searched and seized [] plaintiff without a warrant and without probable cause" in violation of the Fourth Amendment to the United States Constitution; defendant Arellano violated the Fourth Amendment when he arrested plaintiff for the October 2014 burglaries without probable cause; and defendant Williams "maliciously filed false information and misleading information into the court record and

or has maliciously authorized/permitted an assistant clerk to file false and malicious information." (Am. Compl. (DE 54), pp5-13). As relief, plaintiff requests a declaratory judgment and injunctive relief, as well as compensatory and punitive damages.

Defendants' subsequently individually moved for summary judgment. Defendant Thompson also filed an amended request to take judicial notice of certain public documents. Plaintiff did not respond to defendants' motions.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B   Analysis

Defendants raise the affirmative defense of qualified immunity in this § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government

7

official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

1. Defendant Thompson

Plaintiff contends that defendant Thompson searched the car in which plaintiff had been traveling, and then arrested him without probable cause in violation of the Fourth Amendment. Generally, "an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause."[6] Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975) (internal quotations omitted). "Notwithstanding the conclusive effect of the indictments, our precedents instruct that a grand jury's decision to indict . . . will [not] shield a police officer who deliberately supplied misleading information that influenced the decision." Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012) (internal quotations and citations omitted).

A Wake County Grand Jury returned indictments charging plaintiff with each of the felony offenses for which Thompson arrested plaintiff. ((DE 127), Exs. 3, 4). Although plaintiff makes conclusory allegations that defendant Thompson made false representations in order to obtain these indictments, plaintiff has presented no evidence to suggest that the indictments were obtained based

---

[6] To the extent plaintiff asserts that his constitutional rights were violated because he was not provided a probable cause hearing, the North Carolina Supreme Court has held that North Carolina law "requires a probable cause hearing only in those situations in which no indictment has been returned by a grand jury." State v. Lester, 294 N.C. 220, 224, 240 S.E.2d 391, 395–96 (1978). This is true because the purpose of the grand jury is to determine whether probable cause exists to believe that the defendant committed a criminal offense. See N.C. Gen. Stat. § 15A–628(a)(1); State v. Hudson, 295 N.C. 427, 430–31, 245 S.E.2d 686, 691 (1978).

upon any false representations. See Matsushita Elec. Industrial Co. Ltd., 475 U.S. at 587. Thus, plaintiff cannot establish a Fourth Amendment violation.[7]

Alternatively, the court examines whether defendant Thompson had probable cause to arrest plaintiff on December 12, 2014. "[T]he general rule [is] that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime." Bailey v. United States, 568 U.S. 186, 192 (2013) (internal quotation omitted); see Manuel v. City of Joliet, 137 S. Ct. 911, 917 (2017). Probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998) (quotation and citation omitted). The Fourth Circuit Court of Appeals recently provided as follows:

> As this court has explained, "[p]robable cause is determined by a 'totality-of-the-circumstances' approach." Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017) (quoting Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." Id. (quoting United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998)). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." Id. (quoting Gray, 137 F.3d at 769). In making this inquiry, we consider only the information the officers had at the time of the arrest. See id.; Graham v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016). Additionally, "we do not examine the subjective beliefs of the arresting officers to

---

[7] To the extent plaintiff challenges his arrest for misdemeanor possession of marijuana, plaintiff fails to show that the dismissal of this charge was "for reasons consistent with his innocence." Etcheber v. F.B.I., No. 2:13-0752-JFA-BM, 2014 WL 1319145, at *6 & n.6 (D.S.C. Mar. 28, 2014), aff'd, 583 F. App'x 271 (4th Cir. 2014) (per curiam). Thus, the criminal proceedings did not terminate in his favor. See Denmark v. Starcher, No. 1:14CV58, 2016 WL 1122085, at *8 (N.D. W. Va. Mar. 22, 2016), aff'd, 683 F. App'x 195 (4th Cir. 2017) (per curiam). Regardless, Thompson had probable cause to arrest plaintiff for this offense because plaintiff admitted that he was in possession of marijuana. See (Thompson Decl. (DE 89) ¶ 11).

9

> determine whether they thought that the facts constituted probable cause." Munday, 848 F.3d at 253 (quoting Graham, 831 F.3d at 185).

Gilliam v. Sealey, 932 F.3d 216, 234 (4th Cir. 2019).

Here, the record reflects sufficient evidence to establish that defendant Thompson had probable cause to arrest plaintiff for the offenses committed on December 12, 2014. See (Thompson Decl. (DE 89) ¶¶ 16-19); see also, Jilani, 2018 WL 4441153, at *3-5. "Even if the existence of probable cause were a close question, the qualified immunity standard gives ample room for mistaken judgments." Durham, 690 F.3d at 189 (internal quotation omitted). Given the existence of probable cause for plaintiff's arrest, plaintiff cannot maintain his § 1983 claims challenging his arrest.

Finally, to the extent plaintiff asserts that Thompson violated the Fourth Amendment in connection with any search he conducted on December 12, 2014, such claim in unsupported by the record, and his conclusory allegations are insufficient to establish a Fourth Amendment violation. See Matsushita Elec. Industrial Co. Ltd., 475 U.S. at 587; Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a plausible claim to relief]. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (stating minimum level of factual support required). Because plaintiff failed to establish a constitutional violation, defendant Thompson is entitled to qualified immunity.

2. Defendant Arellano

Defendant Arellano moves for summary judgment as to plaintiff's Fourth Amendment claim arising out of Arellano's arrest of plaintiff in connection with the October 2014 burglaries.

Subsequent to plaintiff's arrest, both a magistrate judge and grand jury found that probable cause existed for the arrest of plaintiff on all charges sought by defendant Arellano. This conclusively determines the existence of probable cause, absent the magistrate judge or grand jury's reliance upon deliberately supplied misleading information. Gerstein, 420 U.S. at 117 n.19 (internal quotations omitted); Durham, 690 F.3d at 189. Here, plaintiff has not presented any evidence to suggest that defendant Arellano deliberately supplied the magistrate judge or grand jury false information. See Matsushita Elec. Industrial Co. Ltd., 475 U.S. at 587. Thus, the magistrate judge's warrant and the grand jury's indictment conclusively establish probable cause for plaintiff's arrest in connection with the October 2014 burglaries.

Alternatively, the record demonstrates sufficient probable cause for Arellano's arrest of plaintiff in connection with the burglaries. See (Arellano Aff. (DE 84), ¶¶ 6, 9, 10 and Exs. F, G). To the extent plaintiff contends that defendant Arellano's warrant application was misleading because it did not include the surveillance video depicting the perpetrator of the burglary during which the Bersa Thunder 380 handgun was stolen, his claim lacks merit. In particular, the still image taken from the surveillance video defendant Arellano submitted in support of his motion for summary judgment does not exclude plaintiff as a suspect, and plaintiff has not presented any evidence to establish otherwise. See (DE 131-1), p. 12; (DE 84) Ex. A). Further, Arellano was "not required to exhaust every potentially exculpatory lead or resolve every doubt about [plaintiff's] guilt before probable cause [was] established." See Durham, 690 F. 3d at 190. Based upon the foregoing, plaintiff simply has not met his burden of demonstrating that defendant Arellano arrested him

11

without probable cause, and defendant Arellano is entitled to qualified immunity.[8] See Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002) ("To prove an absence of probable cause, Brown must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that she was violating the disorderly conduct ordinance."); Durham, 690 F.3d at 189 (internal quotations omitted).

### 3. Malicious Prosecution

Plaintiff alleges a malicious prosecution claim against defendants Thompson and Arellano. "[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued—e.g., post-indictment or arraignment—are considered a [section] 1983 malicious prosecution claim." Humbert v. Mayor & City Council of Balt. City, 866 F.3d 546, 555 (4th Cir. 2017), cert. denied, 138 S. Ct. 2602 (2018) (quotation, alteration, and citation omitted). "What is conventionally referred to as a § 1983 malicious prosecution action is nothing more than a § 1983 claim arising from a Fourth Amendment violation." Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000) (internal quotations omitted). "To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012). As previously established, Thompson and Arellano had probable cause to arrest plaintiff. Thus, there is no constitutional violation, and defendants Thompson and Arellano are entitled to qualified immunity for this claim.

---

[8] On October 8, 2018, plaintiff pleaded guilty to felony breaking and entering and felony larceny in connection with a February 2017 burglary. ((DE 84) ¶ 25 and Ex. O). To the extent plaintiff challenges his arrest in connection with the February 2017 burglary, such claim has not yet accrued. See Heck v. Humphrey, 512 U.S. 477, 484–85 (1994); Winfrey v. Rogers, 901 F.3d 483, 492–93 (5th Cir. 2018).

12

To the extent plaintiff alleges a claim for false arrest, such a claim is meritless. Generally, "there is no cause of action for false arrest under section 1983 unless the arresting officer lacked probable cause." Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974) (internal quotation omitted). Here, as discussed above, Thompson and Arellano had probable cause to arrest plaintiff, and these defendants are entitled to qualified immunity.

4. Defendant Williams

Defendant Williams moves to dismiss plaintiff's claim asserting that Williams "maliciously filed false information and misleading information into the court record and or [] maliciously authorized/permitted an assistant clerk to file false and malicious information." (Am. Compl. (DE 54), p. 13). Specifically, plaintiff asserts that defendant Williams violated plaintiff's constitutional rights by filing "false information in Wake County Court records for 14CR228914 showing that [plaintiff] requested a lawyer to be appointed when in fact [he] executed a Waiver of Counsel on August 6, 2015. The Clerk noted on record that [his] defense attorney was Colby Berry even though [he] had executed a Waiver of Counsel." ((DE 134), Ex. C). Plaintiff also states that Williams noted that case number 14CR228914 had been voluntarily dismissed by the State "when in fact the Judge dismissed the charges pursuant to a motion that [he] filed." (Id.)

Plaintiff's claims are not supported by the record, and his conclusory allegations are insufficient to defeat summary judgment. (Meyer Aff.[9] ¶¶ 4-5; Stevens Aff. ¶¶ 7-10; (DE 134) Ex. D, p. 10 and Ex. B, p. 7); see also, Matsushita Elec. Industrial Co. Ltd., 475 U.S. at 587; Ashcroft, 556 U.S. at 678–79; White, 886 F.2d at 723. Additionally, there is no evidence that plaintiff suffered

---

[9] Louis B. Meyer III submitted an affidavit in support of defendant Williams' motion for summary judgment. Meyer serves as a Wake County District Court Judge. (Meyer Aff. ¶ 2).

13

any injury, or that he was subjected to excessive confinement. See id.; 42 U.S.C. § 1997e(e). Based upon the foregoing, plaintiff is unable to establish a constitutional violation, and defendant Williams is entitled to qualified immunity. Thus, the court GRANTS defendant Williams' motion for summary judgment.

To the extent plaintiff alleges that the "policy or custom of only selecting a certain specific classification of citizens to be called for jury duty has violated [his] Fourth[,] Fifth[,] and Fourteenth Amendment right to the United States Constitution," plaintiff has presented no evidence to support his conclusory allegations. Matsushita Elec. Industrial Co. Ltd., 475 U.S. at 587; Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."). Plaintiff, additionally, has not connected any of the remaining defendants to this claim. Thus, plaintiff is not entitled to relief.

To the extent plaintiff asserts that the criminal process resulting in his arrest was invalid because the magistrate judge's name was typed onto the warrant, his claim fails because North Carolina State law does not require that a warrant be hand-signed by a magistrate judge. See N.C. Gen. Stat. §§ 15A-246, 15A-301. Even if the magistrate judge's signature on the warrant did not comply with North Carolina State law, it would not constitute a constitutional violation. See United States v. Warren, No. 7:17-CR-00121-FL-1, 2018 WL 6588508, at *7 (E.D.N.C. Aug. 23, 2018), adopting memorandum and recommendation, 2018 WL 6178447 (E.D.N.C. Nov. 27, 2018). Finally, as set forth above, plaintiff's arrests were supported by probable cause. Thus, this claim lacks merit.

## CONCLUSION

For the aforementioned reasons, the court GRANTS defendant Thompson's amended request to take judicial notice (DE 127). The court also GRANTS defendants' respective motions for summary judgment (DE 125, 128, 132). To the extent plaintiff raises any state law claims, the court declines to exercise supplemental jurisdiction over any state law claims and dismisses such claims without prejudice. 28 U.S.C. § 1367(c)(3); see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012). The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 23 day of January, 2020.

*Terrence Boyle*
TERRENCE W. BOYLE
Chief United States District Judge